CAUGHEY v. MICHAELS.

CANCELLATION OF INSTRUMENTS—LEASES—FRAUD.
In a suit to set aside a lease on the ground of fraud, evidence *held*, insufficient to establish fraud.

Appeal from Wayne; Perkins (Willis B.), J., presiding. Submitted January 11, 1928; resubmitted March 27, 1928. (Docket No. 105.) Decided April 3, 1928.

Bill by Mary Gertrude Caughey against George A. Michaels and Paul M. Klosky, doing business as the M-K Drug Company, and others to set aside a lease. From a decree dismissing the bill, plaintiff appeals. Affirmed.

*Lynch & Lovett*, for plaintiff.

*Atkinson, O'Brien & Clark* (*M. Hubert O'Brien*, of counsel), for defendants.

McDONALD, J.   This bill was filed to set aside a certain lease in which the plaintiff and Manly D. Caughey, her husband, are the lessors and the defendants Michaels and Klosky are lessees.   Plaintiff was the sole owner of a lot on the corner of Chene street and East Grand Boulevard in the city of Detroit, Michigan.   Two adjoining lots were owned by her and her husband by the entireties.   In the spring of 1924, they erected an eight-story apartment building on the three lots.   The building contained several stores and offices in addition to 107 apartments.   In that part of the building covering the corner lot, of which the plaintiff was the sole owner, is a drug store which was leased to the defendants Michaels and

Cancellation of Instruments, 9 C. J. § 195.

Klosky, doing business as the M-K Drug Company. This lease was executed in April, 1924. It was for a period of 10 years with a rental of $275 per month, plus 10% of all medical prescription business. The lease also provided that the lessees should have the exclusive laundry rights of the building. About June 1, 1925, the laundry rights were surrendered to the lessors in order that they might rent one of their vacant stores for laundry purposes. It is the contention of the defendants Michaels and Klosky that they were induced to give up the laundry rights in return for a new lease at lower rental and for a longer term. A new lease was made. It is dated June 29, 1925, but purports to have been executed and acknowledged on October 7, 1925. By the terms of this lease, the rent was reduced to $225 per month plus 10% of the medical prescription business, and the term was fixed at 10 years with the privilege of renewal for an additional 10 years. This is the lease in suit. The plaintiff says that she was tricked into signing it by her husband and defendant Michaels; that she did not read the lease but relied on the statement of Mr. Michaels that it was a transfer of the laundry rights; that she did not know that such a lease existed until after she and her husband had sold the apartment property to the Boulevard Development Corporation. They made the sale in April, 1927, and assigned to the purchaser all leases except the lease in question. Instead of assigning this one, they assigned the original lease. At the time they made the assignment, plaintiff's husband knew of the second lease, but she says that she had no knowledge of it. Trouble arose when the purchaser attempted to collect rents from Michaels and Klosky under the original lease. They would not pay under that lease. The Boulevard Development Corporation then began suit for damages against the plaintiff and her husband. To avoid liability in that

suit the plaintiff filed this bill to set aside the lease. On the hearing, the circuit judge dismissed the bill. The plaintiff has appealed.

The issue involves a question of fact relative to the execution of this lease by the plaintiff. She admits her signature, but says that she did not know she was signing a lease; that it was represented to her that the instrument was a release of the rights of defendants Michaels and Klosky in the laundry privileges of the building; that if she had known it was a lease she would not have signed it.

In his opinion the trial court said:

"The plaintiff is a woman of unusual intelligence and business experience. She and her husband have always worked harmoniously together in the accumulation of their property. Harmonious relations still exist, notwithstanding the fraud alleged to have been practiced on her by her husband in this transaction."

Being a woman of unusual intelligence, it is difficult to understand how the plaintiff could have signed the instrument in question without learning that it was a lease. She did not read it, but if she had merely glanced at it she would have discovered that it was a lease. It is not claimed that anything was done to prevent her from reading it or looking it over. It was on a printed lease form with the word "lease" printed on the front and back in large type. She was familiar with forms of lease and it would seem that a woman of her business experience would have recognized this as such. But a decision in this case should not rest on mere probabilities. The evidence preponderates in favor of the defendants' claim that she executed the lease with full knowledge of its contents. It purports to have been signed in the presence of two witnesses one of whom as notary took the acknowledgment of the parties. These witnesses are in the banking business. Mr. Higgins who took the acknowledgment is manager of one of the branches of

the People's State Bank.    He testified that he distinctly recollected having read aloud the lease in the plaintiff's presence and having inquired if she knew what she was signing and if it was her free act and deed.    The other witness was a Mr. Fisher, assistant manager of the same bank with which Mr. Higgins was connected.    In his testimony, he was unable to recall the details of the transaction, but testified to the time, the place, and the fact of the execution of the lease in his presence.    In the main, the testimony of the witnesses to the lease was supported by that of defendants Michaels and Klosky.    Opposed thereto is the testimony of the plaintiff and her husband, Dr. Caughey, both of whom deny that the instrument was signed in the presence of the witnesses Higgins and Fisher, or that it was signed at the time and place testified to by them.    We do not attach much, if any, credit to the testimony of Dr. Caughey.    If what he says be true, he voluntarily and against his own interest as well as that of his wife conspired with Michaels to fraudulently obtain her signature to the lease.    His willingness to perpetrate a wrong upon his wife who trusted him with her business and with whom he was living in harmony, and his delay in confessing his fraud until it was to his financial interest to do so, does not commend him favorably as a witness.    On the theory that he is telling the truth, it would be difficult to account for his conduct toward his wife.    The record furnishes no reason for believing that it was necessary for him to resort to trickery to secure her signature to the lease.    She had implicit confidence in him.    They both were financially interested in the building.    He looked after her interests.    It was his judgment that in view of business conditions it was advisable to make a new lease more favorable to Michaels and Klosky.    He expressed his willingness to sign such a lease, and,

undoubtedly, his wife would also have signed if he had advised her to do so.    It is true that there are circumstances which might be weighed against either side of this controversy.    But, in our judgment, the testimony of the two disinterested witnesses who claim that the lease was executed in their presence is entitled to much credit.    Both of these witnesses occupy positions of trust.    It is hardly probable that they would deliberately commit the crime of perjury in order to help Michaels and Klosky establish this lease.    There is nothing in the record that would justify us in finding that they did so.    In view of their testimony, we are unable to say that the plaintiff has established her allegations of fraud by a preponderance of the evidence.    The circuit judge correctly disposed of the issue.    No other questions require discussion.

The decree of the trial court is affirmed, with costs to the defendants Michaels and Klosky.

FEAD, C. J., and NORTH, FELLOWS, WIEST, CLARK, POTTER, and SHARPE, JJ., concurred.